

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
11/07/2011

| | | |
|---|---|---|
| IN RE: | § | |
| **NORAM RESOURCES, INC.**, *et al*, | § | **Case No. 08-38222** |
| Debtor(s). | § | |
| | § | **Chapter 7** |
| | § | |
| **WILLIAM G. WEST,** | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **Adversary No. 10-03701** |
| | § | |
| **MARK AVERY,** *et al*, | § | |
| Defendant(s). | § | **Judge Isgur** |

<u>**MEMORANDUM OPINION**</u>

William West, the chapter 7 Trustee for Debtors Ausam Energy Corp. and Noram Resources, Inc., has sued Mark Avery, Ralph Davis, Robert Eriksson, William Hitchcock, Richard Lummis, and Alastair Robertson (collectively, "Directors"), alleging that they breached their duty of care as officers and directors of Ausam. The Directors have filed motions to dismiss all of the Trustee's claims for failure to state a claim on which relief can be granted. ECF Nos. 34 & 43. The Court grants, in part, the Directors' motions to dismiss. As to the claims against Hitchcock, Eriksson, and Davis, the Court converts the motions to dismiss to motions for summary judgment and requires the parties to file stipulations. The Court will issue an order on all claims after the parties have filed stipulations.

**Background**

The Trustee alleges that the Directors acted negligently as officers and directors of Ausam. The allegations center around three major events. The Court does not assume the truth

of the allegations and reports them solely for the purposes of determining whether the Trustee has stated claims.

First, the Directors allegedly caused the purchase of a large number of oil and gas leases ("SKH Leases") from SKH Management L.P.; SKH Management II, L.P.; SKH Management III, L.L.C.; SKH Energy Fund, L.P.; and Antares Exploration Fund, L.P. (collectively, "SKH") without sufficient investigation or safeguards.  Ausam executed an Asset Purchase Agreement ("APA") with SKH for the purchase of the SKH Leases.  The Directors did not hire title counsel before the purchase, relying instead on the services of a landman.  When the landman alerted the Directors to potential title problems, the Directors did not investigate.  According to the Trustee, the Directors could have acquired the SKH Leases at a reduced price if they had adequately investigated.  The Directors also could have required SKH to correct the title defects.  After the execution of the APA, the Directors did not pursue legal remedies against SKH.

Second, the Directors allegedly caused Ausam to invest in the Rice University No. 1, A-393 IH well ("Rice Well") at a time when Ausam was experiencing financial difficulties.  The well turned out to have numerous mechanical problems, and ultimately it was a commercially dry well.

Finally, the Directors allegedly caused Ausam to pay excessive salaries and bonuses at a time when Ausam was already losing money.  Many of Ausam's executives' salaries were significantly higher than national averages.

The Trustee is suing the Directors for breach of the duty of care.  ECF No. 33, at 19.  The Court construes the Trustee's claims as negligence claims and analyzes the sufficiency of the

Trustee's allegations with respect to each of the three major events: the purchase of the SKH Leases, the investment in the Rice Well, and the executive compensation decisions.[1]

## Bankruptcy Court's Authority

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts. *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011). The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment.

The Court may also exercise authority over essential bankruptcy matters under the "public rights exception." Under *Thomas v. Union Carbide Agricultural Products Co.*, a right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal. 473 U.S. 568, 593 (1985). The Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including "the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts." *Central Va. Cmty. College v. Katz*, 546 U.S. 356, 363-64 (2006); *see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (plurality opinion) (noting in dicta that the restructuring of debtor-creditor relations "may well be a 'public right'"). *But see Stern*, 131 S.Ct. at 2614 ("We noted [in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 n.11 (1989)] that we did not mean to 'suggest that the restructuring of debtor-creditor relations is in fact a public right.'").

---

[1] The Trustee alleges that Noram, as a wholly owned subsidiary of Ausam, participated in the SKH Leases transaction and may have participated in the Rice Well transaction. ECF No. 33, at 3; *see* ECF No. 33, at 11 ("[The Directors] caused the companies to acquire [an interest in the Rice Well] through a joint venture farm-in agreement between Ausam (or its wholly-owned subsidiary) and Vision Resources LLC."). It is unclear whether the Directors may be liable to Noram's estate in their capacity as Ausam Directors or whether any of the Directors owed duties directly to Noram. However, the parties do not raise the issue, and the Court does not address, whether Noram's estate has standing to raise any or all of the claims.

Many bankruptcy proceedings likely fall outside the public rights exception.  The Supreme Court has held that a fraudulent conveyance suit, filed under § 548 of the Bankruptcy Code against a party that had not filed a claim against the estate, fell outside the public rights exception.  *Granfinanciera*, 492 U.S. at 55-56.  The public rights exception is likely even more limited when claims are asserted under non-bankruptcy law.  After *Stern*, the Court's authority over state-law matters (or, in this case, foreign-law matters) is particularly questionable.

Final adjudication of this adversary proceeding likely does not fall within the Bankruptcy Court's constitutional authority.  The Trustee asserts that his claims are core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).  Even if the Trustee's claims fall within the statutory core authority of the Bankruptcy Court, the statutory grant of authority is likely unconstitutional under *Stern*.

Three of the Directors filed proofs of claim in the Debtors' bankruptcy cases.  Avery and Davis filed claims against Ausam and Noram for salary and severance.  Claim Nos. 33-1 & 34-1.  Davis claims $310,820.82, of which $43,000.00 is the 2008 bonus allegedly due under his employment contract.  Avery claims $361,303.08, of which $41,250.00 is the 2008 bonus allegedly due under his employment contract.  These claims are closely connected to the Trustee's claims relating to executive compensation and bonuses.  The factual issues involved in the Trustee's claims could also be involved in a challenge to Avery and Davis' claims against the estate.  However, the larger issue of whether the Directors breached the duty of care through their compensation decisions would not necessarily be resolved through the adjudication of Avery and Davis's claims against the estate, and the executive compensation claims do not fall within the Court's authority.  *See Stern*, 131 S.Ct. at 2618 ("Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is

whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.").

Hitchcock filed a claim for "monies loaned."  Claim No. 55-1.  He asserts that Noram owes him $1,020,713.33.  Hitchcock's claim against the estate does not appear to be intertwined with any of the Trustee's claims against the Directors.  The other Directors did not file claims against the estate.

This proceeding is not integrally bound up in the bankruptcy process.  The Trustee's claims against the Directors are based entirely on Canadian law, and the Canadian-law character of the claims is in no way altered by bankruptcy law.  *Cf. Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993) (holding that, with respect to jury rights, a creditor's consent to a bankruptcy court's *in rem* jurisdiction transforms the character of the claim from legal to equitable, but that this transformation does not affect "disputes that are only incidentally related to the bankruptcy process").  Under *Stern*, the Bankruptcy Court probably does not have constitutional authority to enter a final judgment in this adversary proceeding.

However, the Court has the authority to decide a motion to dismiss.  The Court does not enter a final judgment with respect to any claim; the constitutional limitations on the Court's authority to enter final judgments are not implicated.

### Procedural History

Ausam and Noram filed chapter 11 bankruptcy petitions on December 30, 2008.  Case Nos. 08-38222 & 08-38223.  The bankruptcy cases are jointly administered.  The cases were converted to chapter 7 cases on February 26, 2009.  ECF No. 70.  William West was appointed chapter 7 Trustee ("Trustee") on February 27, 2009.

The Trustee filed this adversary proceeding against the Directors on December 29, 2010, asserting claims for breach of the duty of care and seeking both actual and punitive damages. ECF No. 1.  The Trustee filed the First Amended Complaint on February 15, 2011.  ECF No. 14. Avery, Davis, Hitchcock, and Lummis filed a motion to dismiss on March 2, 2011.  ECF No. 22. The Trustee filed a response on April 5, 2011.  Eriksson and Robertson joined in the motion to dismiss on April 18, 2011.  ECF No. 24.  The Directors filed a supporting reply on April 19, 2011.  ECF No. 25.

At a hearing on April 20, 2011, the Court noted that the First Amended Complaint likely did not state a claim with respect to executive compensation decisions because it did not plead any facts regarding specific salaries or bonuses.  ECF No. 40, at 29-30.  The Court stated that it would allow the Trustee to replead the executive compensation claim.  ECF No. 40, at 29, 61 & 63.  The Court expressed doubt about whether the Rice Well claim was sufficiently stated.  ECF No. 40, at 63.

The Court and the parties also discussed the application of Canadian law to this case. The Court gave the parties time to file additional briefs on the standards governing the Trustee's claims under Canadian law.  The Trustee and the Directors filed extensive additional briefing. ECF Nos. 26, 27, 28 & 29.

On May 23, 2011, the Court signed an order extending the Trustee's time to file amendments to the pleadings until May 31, 2011.  The Directors were given until July 1, 2011 to file Rule 12(b)(6) motions directed to the amended pleadings.  ECF No. 31.  The Trustee filed the Second Amended Complaint on May 31, 2011.  ECF No. 33.

The Directors filed a supporting motion to dismiss on May 31, 2011.  ECF No. 34.  They also filed numerous exhibits of applicable Canadian cases.  ECF Nos. 35-38.  The Directors

addressed the amended Rice Well and executive compensation pleadings in a motion to dismiss filed on June 30, 2011.  ECF No. 43.  The Trustee filed a response on July 20, 2011, and the Directors filed a reply on August 5, 2011.  ECF Nos. 44 & 45.

### Summary of Arguments

The Directors argue that the Trustee's claims are barred by two clauses in Ausam's bylaws: an exculpation clause and an indemnification clause.  The exculpation clause bars claims against officers and directors unless they failed to act honestly and in good faith and failed to exercise due care.  The Directors contend that because the Trustee does not adequately allege either failure to act honestly and in good faith or failure to exercise due care, the Trustee's claims are barred by the exculpation clause.  Furthermore, the Directors argue, they are entitled to indemnification as long as they acted honestly and in good faith.

The Directors also argue that claims should be dismissed because three of the Directors did not hold a position with Ausam at the time certain alleged acts occurred.  They also assert that some claims are barred by the statute of limitations.

Finally, the Directors argue that the business judgment rule bars the claims.  According to the Directors, the Trustee does not allege any acts that fall outside the protection of the business judgment rule.  The Directors argue that the business judgment rule "requires a standard of proof substantially higher than simple negligence to impose liability on a director for actions taken in the service of the corporation."  ECF No. 45, at 8.

The Trustee argues that the exculpation clause is invalid because it is impermissibly broad and that indemnification must await the outcome of this proceeding.  The Trustee says that he alleges acts that occurred while each of the Directors held positions with Ausam.  The statute of limitations, the Trustee further argues, had not expired as to any of the claims on December

30, 2008, the date Ausam and Noram filed for bankruptcy, and therefore he may raise the claims under 11 U.S.C. § 108(a)(2).

The business judgment rule, the Trustee asserts, does not bar the claims: to overcome the business judgment rule, he needs to prove only simple negligence.  According to the Trustee, the complaint adequately alleges conduct that falls outside of the business judgment rule's protection.

### Rule 12(b)(6) Standard

The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Fed. R. Civ. P. 8(a)(2)'s pleading requirements.  Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  In *Ashcroft v. Iqbal,* the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct."  129 S.Ct. 1937, 1950 (2009) (quoting Rule 8(a)(2)).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks removed).

A motion under Rule 12(b)(6) will be treated as one for summary judgment under Rule 56 when matters outside the pleadings are presented and not excluded by the Court. Fed. R. Civ. P. 12(d); Fed. R. Bankr. P. 7012(d). Under Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. In the event a motion to dismiss is converted to one for summary judgment, a court must first give the parties notice and then may consider all evidence presented. *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009).

## Analysis

The Court grants, in part, the Directors' motions to dismiss. The Trustee states claims for negligence with respect to the SKH Leases and the Rice Well. The Trustee also states claims with respect to insider salaries and the bonuses awarded in April 2008. The Trustee does not, however, state claims with respect to non-insider salaries.

The Court does not dismiss any claims against Hitchcock, Eriksson, and Davis on the basis of the dates they assumed their positions with Ausam, but instead converts the motions to motions for summary judgment as to this issue. After the parties have submitted stipulations and summary judgment evidence, the Court will issue an order ruling on summary judgment and dismissal.

The Court first determines which law governs the Trustee's claims. In a diversity action involving state-law claims, a federal court must apply the choice-of-law rules of the forum in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *ASARCO LLC v. Americas Mining Corp.*, 382 B.R. 49, 60 (S.D. Tex. 2007). Bankruptcy courts are not bound by *Klaxon*. However, when bankruptcy courts adjudicate state-law claims that do not implicate

federal policy, they may also apply the choice-of-law rules of the forum in which they sit. *ASARCO LLC*, 382 B.R. at 60-61 (citing *Woods-Tucker Leasing Corp. of Ga. v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir. 1981)).  The Court need not decide whether federal or state choice-of-law rules apply to a Canadian-law claim in a bankruptcy adversary proceeding.

Both federal and Texas choice-of-law rules state that a corporation's internal affairs should be governed by the law of the state of incorporation.  *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) ("As a general matter, the law of the state of incorporation normally determines issues related to the *internal* affairs of a corporation"); *Am. Realty Trust Inc v. Matisse Capital Partners LLC*, 91 F. App'x 904, 910-11 (5th Cir. 2003) (noting that a corporation's internal affairs, "including the rights and duties of its officers and directors" are governed by the law of the state of incorporation); *Askanase v. Fatjo*, 130 F.3d 657, 670 (5th Cir. 1997) ("Federal courts sitting in Texas apply the law of the state of incorporation when a corporation's internal affairs are implicated."); *see also* Rest. (2d.) of Conflict of Laws § 309 ("The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship[.]").

The internal affairs doctrine applies because "the state of incorporation has an interest superior to that of other states in regulating the directors' conduct of the internal affairs of its own corporations."  *Koury v. Xcellence, Inc.*, 649 F. Supp. 2d 127, 135 (S.D.N.Y. 2009).  The doctrine is therefore equally applicable when the place of incorporation is another country.  *See, e.g.*, *NatTel, LLC v. SAC Capital Advisors LLC*, 370 F. App'x 132, 134 (2d Cir. 2006) (holding that shareholders' claims were governed by the law of the Bahamas, the country where the

company was incorporated); *Harrison v. Triplex Gold Mines*, 33 F.2d 667, 672 (1st Cir. 1929) (holding that the internal affairs of a Canadian-incorporated company were governed "only by the laws of the country of its incorporation"); *In re BP p.l.c. Derivative Litigation*, 507 F. Supp. 2d 302, 310 (S.D.N.Y. 2007) (concluding that because "BP is incorporated in England and Wales, the law of England and Wales governs the substantive claims in this case").

Ausam is a Canadian corporation organized under the laws of Alberta.  ECF No. 33, at 3. This suit is therefore governed by Alberta law.  The Court therefore considers the statutes of Alberta and decisions of Alberta courts, in addition to decisions from the Supreme Court of Canada and from other Canadian provinces.[2]  *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence.  The court's determination must be treated as a ruling on a question of law.").

The motion to dismiss, as explained above, is governed by Fed. R. Civ. P. 12 and the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See All Plaintiffs v. All Defendants*, 645 F.3d 329 (5th Cir. 2011) ("The black letter rule of *Erie* is that federal courts 'apply state substantive law and federal procedural law.'") (quoting *Foradori v. Harris*, 523 F.3d 477, 486 (5th Cir. 2008)).

---

[2] This practice is consistent with that of Canadian courts.  *See, e.g.*, *Alberta (Sec. Comm'n) v. Workum*, 2010 ABCA 405 (Can. Alta. C.A.) (considering cases from the Supreme Court of Canada as well as provincial courts of Alberta, British Columbia, and Ontario); *see also* Peter James McCormick, *Canada's Courts* 143 (1994) ("What differentiates Canadian provincial appeal judges from U.S. state supreme court judges is less a centralized fixation on the Supreme Court than a pluralistic openness to a variety of judicial authorities. . . . Canadian provincial courts of appeal are twice as likely to cite other provincial appellate courts as a U.S. state supreme court is to cite other state supreme courts.") (citation omitted).  Provincial courts are bound by the decisions of the Canadian Supreme Court, but not other provincial courts.  *R. v. Wolf*, [1975] 2 S.C.R. 107, para. 2 (Can.) ("The only required uniformity among provincial appellate courts is that which is the result of the decisions of this Court.").

The Court considers six questions:

1. Under Canadian law, what standard applies to claims for breach of the duty of care?

2. What effect does the Ausam bylaws' exculpation clause have on the Trustee's claims at the Rule 12(b)(6) stage?

3. What effect does the Ausam bylaws' indemnification clause have on the Trustee's claims at the Rule 12(b)(6) stage?

4. The Directors assert that Hitchcock, Eriksson, and Davis were not officers or directors at the time of some of the alleged conduct.  Should any claims be dismissed on this basis?

5. The Directors assert that some of the claims are barred by the Alberta statute of limitations.  Should any claims be dismissed on this basis?

6. In light of the substantive standard, does the Trustee meet Rule 8(a)(2)'s pleading requirements?

## 1. Standard for Duty of Care

The Trustee alleges that the Directors violated their duty of care to Ausam.  The Trustee's claims against the Directors are based on their alleged violations of the Alberta Business Corporations Act, R.S.A. 2000, c. B-9.  Section 122(1)(b) of the ABCA sets forth the duty of care.  Although plaintiffs may not assert an independent claim for breach of a statutory duty, the ABCA's duty of care is the applicable standard of conduct in a negligence action against officers or directors.  *See In re BCE Inc.*, [2008] 3 S.C.R. 560, para. 44 (Can.) ("Section 122(1)(b) [of the Canada Business Corporations Act] does not provide an independent foundation for claims. However, . . . courts may take this statutory provision into account as to the standard of behavior that should reasonably be expected."); *R. v. Saskatchewan Wheat Pool*, [1983] 1 S.C.R. 205, para. 37 (Can.) ("Breach of statute, where it has an effect upon civil liability, should be

considered in the context of the general law of negligence."); *Transportaction Lease Sys. Inc. v. Weaver*, 2007 ABQB 246, para. 51 (Can. Alta. Q.B.) ("Thus, the alleged breach of the duty of care as contemplated by s. 122(1)(b) does not give the Plaintiff a direct action under the A.B.C.A., but may constitute the standard of conduct owed by directors and 'officers' to creditors at common law in an action based upon the tort of negligence if the elements of that tort can be made out.").

The Court construes the Trustee's claims as negligence claims.  Under Canadian law, "[a] successful action in negligence requires that the plaintiff demonstrate (1) that the defendant owed him a duty of care; (2) that the defendant's behavior breached the standard of care; (3) that the plaintiff sustained damage; (4) that the damage was caused, in fact and in law, by the defendant's breach."  *Mustapha v. Culligan of Can. Ltd.*, [2008] 2 S.C.R. 114, para. 3 (Can.).  It is clear from the complaint, and the parties do not dispute, that the Directors owed a duty of care to Ausam. ECF No. 33, at 3; *see BCE*, [2008] 3 S.C.R. 560, at para. 43-44 (noting that the duty of care under the CBCA is owed both to the corporation itself and to other stakeholders).  The Trustee also alleges that either Ausam or Noram sustained damage, and that the damage was caused by the Directors' breach of the duty of care.[3]  ECF No. 33, at 9-10, 14 & 18-19.  The Directors argue, however, that the Trustee does not adequately allege any breach of the duty of care.  The Court therefore examines whether the Trustee pleads that the Directors breached their duty of care, taking the statutory duty of care under the ABCA into account as the standard of behavior.

Section 122(1) of the ABCA states:

> Every director and officer of a corporation in exercising the director's or officer's powers and discharging the director's or officer's duties shall

---

[3] As discussed in note 1, the Court does not at this time determine which estates have standing to assert which claims.

>    (a) act honestly and in good faith with a view to the best
>        interests of the corporation, and
>
>    (b) exercise the care, diligence and skill that a reasonably
>        prudent person would exercise in comparable
>        circumstances.

R.S.A. 2000, c. B-9, s. 122(1).

The ABCA requires more of officers and directors than avoiding grossly negligent behavior. The standard of care under the statute is that of "a reasonably prudent person . . . in comparable circumstances." Interpreting the identical language of the CBCA, R.S.C. 1985, c. C-44, the Supreme Court of Canada stated that a corporate officer or director must "act prudently and on a reasonably informed basis." *In re People's Dep't Stores Inc.*, [2004] 3 S.C.R. 461, para. 67 (Can.).

Under the common law, the standard of care "was a reasonably relaxed, subjective standard." *Id.* at para. 59. "The common law required directors to avoid being grossly negligent with respect to the affairs of the corporation and judged them according to their own personal skills, knowledge, abilities and capacities." *Id.* Under the CBCA (and the identical language of the ABCA) the duty of care is more demanding. *See id.* ("That directors must satisfy a duty of care is a long-standing principle of the common law, although the duty of care has been reinforced by statute to become more demanding."). Contrary to the Directors' arguments, the Trustee need not plead facts showing gross negligence to state a claim for breach of the duty of care.

The duty of care is tempered by the business judgment rule.  Courts do not demand perfect results.  A decision must only be reasonable at the time it was made:

> The decisions [directors and officers] make must be reasonable business decisions in light of all the circumstances about which the directors or officers knew or ought to have known.  In determining whether directors have acted in a manner that breached the duty of care, it is worth repeating that perfection is not demanded.  Courts are ill-suited and should be reluctant to second-guess the application of business expertise to the considerations that are involved in corporate decision making, but they are capable, on the facts of any case, of determining whether an appropriate degree of prudence and diligence was brought to bear in reaching what is claimed to be a reasonable business decision at the time it was made.

*Id.* at para. 67.  The decision need not have been the best possible decision, but only one of several reasonable alternatives:

> The court looks to see that the directors made a *reasonable* decision *not a perfect* decision.  Provided the decision taken is within a range of reasonableness, the court ought not to substitute its opinion for that of the board even though subsequent events may have cast doubt on the board's determination.  As long as the directors have selected one of several reasonable alternatives, deference is accorded to the board's decision[.]

*Id.* at para. 65 (quoting *Maple Leaf Foods Inc. et al. v. Schneider Corp. et al.* (1998), 42 O.R. (3d) 177 (Can. Ont. C.A.)).  Moreover, as long as directors are disinterested, their decisions are presumptively in the best interests of the corporation:  "The [business judgment] rule is in effect a presumption that if the directors of the corporation make an informed decision that the disadvantages outweigh the advantages . . . then this is what is in the best interests of the corporation."  *Schafer v. Int'l Capital Corp.* (1996), 153 Sask. R. 241, para. 25 (Can. Sask. Q.B.).  However, "[i]f there is misconduct or a dual relation then the presumption that the decision of the directors is in the best interests of the corporation will not apply."  *Id.*

The determination of whether a decision was reasonable must be made in the context of all the facts:

> The scope of the duty and the determination as to whether the directors and officers' conduct fell below the applicable standards of care in the exercise of their office are questions of fact (or mixed fact and law), not pure questions of law, and require a complete evidentiary record. The question of whether in the circumstances of the present case there was a specific duty to make investigations of HWGI is to be determined in the context of all the facts at trial.

*Dylex Ltd. (Trustee of) v. Anderson* (2003) 63 O.R. (3d) 659, para. 26 (Can. Ont. Sup. Ct. J.).

Finally, the business judgment rule does not preclude a careful examination of the processes the Directors used to make decisions or an examination of the information on which their decisions were based. As one Alberta court stated in a shareholder oppression case,

> [D]irectors are only protected [by the business judgment rule] to the extent that their actions actually evidence their business judgment. The principle of deference presupposes that directors are scrupulous in their deliberations and demonstrate diligence in arriving at decisions. Courts are entitled to consider the content of their decision and the extent of the information on which it was based and to measure this against the facts as they existed at the time the impugned decision was made. Although Board decisions are not subject to microscopic examination with the perfect vision of hindsight, they are subject to examination.

*Carlson Family Trust v. MPL Commc'ns Inc.*, 2009 ABQB 77, para. 11 (Can. Alta. Q.B.) (quoting *UPM-Kymmene Corp. v. UPM-Kymmene Miramichi Inc.* (2002), 27 B.L.R. 53, paras. 152-53 (Can. Ont. Sup. Ct. J.)).

American federal courts disagree about whether the business judgment rule may be considered at the Rule 12(b)(6) stage. A Delaware federal court ruled that "[t]he application of the business judgment rule is an affirmative defense, the determination of which is not proper at

the motion to dismiss stage." *Miller v. McCown De Leeuw & Co., Inc.*, 368 B.R. 394, 401

(Bankr. D. Del. 2007).

> However, a court in the Northern District of Texas stated:

>> Delaware case law unambiguously holds that the plaintiff bears the burden of proof in rebutting the presumption of the business judgment rule.  By definition, an affirmative defense is a defense that "[t]he defendant bears the burden of proving."  *Black's Law Dictionary* (9th ed. 2009).  Thus, describing the presumption created by the business judgment rule as an affirmative defense is, at best, a dubious characterization of the rule. . . . In order to state a claim for breach of fiduciary duty under Delaware law that is plausible on its face, a plaintiff must plead factual content that allows the court to draw a reasonable inference that in making the challenged decision, the directors or officers breached their duties of loyalty or care.

*Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 679 (N.D. Tex. 2011) (citations omitted).

Similarly, a court in the Southern District of New York stated, "In order for plaintiffs' duty of

care claims to survive a motion to dismiss, they must sufficiently plead facts which if true would

take defendants' actions outside the protection afforded by the business judgment rule."  *Official

Committee of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S & B Holdings LLC)*,

420 B.R. 112, 146 (Bankr. S.D.N.Y. 2009).

> This Court follows the *Kaye* court.  The Canadian business judgment rule, like the

Delaware business judgment rule discussed in *Kaye*, "is in effect a presumption that if the

directors of the corporation make an informed decision that the disadvantages outweigh the

advantages," the decision is reasonable.  *Schafer*, 153 Sask. R. 241, at para. 25.  When a

complaint does not plead facts that, if true, would allow the reasonable inference that the alleged

conduct falls outside the protection of the business judgment rule, a claim should be dismissed.

The complaint need not, however, definitively establish that the business judgment rule would not apply:

> In determining whether to dismiss based on the business judgment rule, the Court must consider whether the totality of the allegations establish a "reasonable doubt" about whether the defendant's actions are protected by the business judgment rule; at this stage, the plaintiff's allegations need not rise to the level of supporting a judicial determination that the directors' actions fall outside the business judgment rule.

*Seidel v. Byron*, 405 B.R. 277, 290 (N.D. Ill. 2009).

The Court instead examines whether there is a reasonable doubt, in the context of all the facts alleged by the Trustee, that the decision to purchase the SKH Leases, the decision to purchase the Rice Well, and Ausam's executive compensation decisions were "within a range of reasonableness." If the pleadings establish a reasonable doubt as to whether the actions were within a range of reasonableness, then the Trustee has pleaded that the Directors breached their duty of care.

## 2. Exculpation Clause

The Directors argue that the Trustee's claims should be dismissed because they are barred by the exculpation clause in the Ausam bylaws. Courts disagree as to whether exculpation clauses can be considered at the Rule 12(b)(6) stage. *Compare Holmes v. Air Line Pilots Ass'n, Int'l*, 745 F. Supp. 2d 176, 198 (E.D.N.Y. 2010) ("Exculpation clauses are properly considered in a Rule 12(b)(6) motion to dismiss."), *with Stanziale v. Nachtomi (In re Tower Air)*, 416 F.3d 229, 242 (3d Cir. 2005) ("[T]he protection of an exculpatory charter provision appears to be in the nature of an affirmative defense. As we have said, affirmative defenses generally will not form the basis for dismissal under Rule 12(b)(6)."), *quoted in Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 502 (Bankr. D. Del. 2010).

The Court need not decide the extent to which the Ausam exculpation clause should be considered.  The Trustee asserts claims for breach of the duty of care.  The ABCA does not allow exculpation with respect to the duty of care.

The Ausam bylaws exculpate directors and officers "[t]o the extent permitted by law" unless the loss caused by a director or officer happens "by or through his failure [1] to act honestly and in good faith with view to the best interests of the Corporation and in connection therewith [2] to exercise the care, diligence and skill that a reasonably prudent person would exercise in comparable circumstances."  ECF No. 22-2, at 5.

The bylaws exculpate unless a director or officer has violated *both* the duty to act honestly and in good faith *and* the duty to exercise care.  However, the ABCA does not allow exculpation when directors breach *either* the duty to act honestly and in good faith *or* the duty of care:

> Subject to section 146(7), no provision in a contract, the articles, the bylaws or a resolution relieves a director or officer from the duty to act in accordance with this Act or the regulations or relieves the director or officer from liability for a breach of that duty.

R.S.A. 2000, c. B-9, s. 122(3); *see Tongue v. Vencap Equities Alta. Ltd.* (1994), 148 A.R. 321, para. 139 (Can. Alta. Q.B.) (ruling that under section 122(3) of the Canada Business Corporations Act, nearly identical to section 122(3) of ABCA, "no provision in a contract . . . can relieve [directors] from their duty to act in accordance with the C.B.C.A. or their liability for a breach of the C.B.C.A.  Directors cannot obtain a valid release from liability for future breaches of the C.B.C.A.").

If the Trustee alleges breach of the duty of care, he need not also allege failure to act honestly and in good faith.  To the extent that the Trustee has stated claims, the Directors' liability under those claims is not affected by the exculpation clause.

## 3.  Indemnification Clause

The Directors also argue that the claims should be dismissed on the basis of the indemnification clause in the Ausam bylaws.  The Ausam bylaws state:

> The Corporation shall indemnify a director or officer of the Corporation, a former director of the Corporation or a person who acts or acted at the Corporation's request as a director or officer of a body corporate of which the Corporation is or was a shareholder or creditor, and his heirs and legal representatives to the extent permitted by the Business Corporations Act.

ECF No. 22-2, at 4.

Under the ABCA, when an action is brought against a director or officer by or on behalf of the corporation itself,[4]

> A corporation may with the approval of the Court indemnify a person . . . in respect of an action by or on behalf of the corporation or body corporate to procure a judgment in its favour, to which the person is made a party by reason of being or having been a director or an officer of the corporation or body corporate, against all costs, charges and expenses reasonably incurred by the person in connection with the action if the person fulfils the conditions set out in subsection (1)(a) and (b).

---

[4] The Court concludes that § 124(2), applicable to actions against officers or directors brought by or on behalf of the corporation, governs this suit—not § 124(1), which applies to actions "[e]xcept in respect of an action by or on behalf of the corporation or body corporate to procure a judgment in its favour[.]"  ABCA § 124(1).  Section 124(2) requires court approval before a corporation can indemnify, and § 124(1) does not.  Courts in Ontario have interpreted a provision in the Ontario Business Corporations Act that is nearly identical to § 124(2) as applying only to derivative actions.  *Jolian Inv. Ltd. v. Unique Broadband Sys. Inc.*, 2011 ONSC 3241, paras. 119-25 (Can. Ont. Sup. Ct. J.).  The OBCA provision, however, has the heading "Derivative actions."  OBCA § 136(4.1).  The *Jolian Investments* court emphasized that the heading could be used as an aid to interpreting the meaning of the provision.  *Id.* at para. 122.  The ABCA provision has no such heading, and the Court reads the plain language of § 124(2) as applying to any action "by or on behalf of the corporation" against its officers or directors—including this proceeding.  But the outcome does not depend on whether § 124(2) or § 124(1) applies.  Regardless of whether court approval would be required under ABCA to indemnify the Directors, the Court cannot make the determination that the Directors are entitled to indemnification at the Rule 12(b)(6) stage.

R.S.A. 2000, c. B-9, s. 124(2). Subsection (1)(b) is applicable only to criminal and administrative actions. The Directors' indemnification rights are governed by subsection (1)(a), which states that indemnification is allowed only when "the director or officer acted honestly and in good faith with a view to the best interest of the corporation[.]"

The Court does not reach the issue of whether the Directors acted honestly and in good faith. Even if the Directors are entitled to indemnification, it is not clear that the indemnification amounts would completely offset any damages.

The Directors' indemnification rights should properly be raised as claims against the bankruptcy estates, rather than as a defense to the Trustee's claims. *See Banco Latino Int'l v. Gomez Lopez (In re Banco Latino Int'l)*, 404 F.3d 1295, 1296 (11th Cir. 2005) (requiring directors and officers, who had been sued by the debtor, to show excusable neglect before bankruptcy court could allow late-filed claim for indemnification); *In re EnerNorth Indus. Inc.* (2008), 40 C.B.R. (5th) 274, para. 25 (Can. Ont. Sup. Ct. J.) (discussing the non-priority status of an Ontario Business Corporations Act indemnification claim under Canadian bankruptcy law); *Bennett v. Bennett Envtl. Inc.* (2009), 94 O.R. (3d) 481, paras. 34 & 35 (Can. Ont. C.A.) (discussing standards for indemnification claims under the CBCA).

Any indemnification claims the Directors have against the estates would not necessarily offset the Trustee's claims against the Directors in their entirety. The Directors' hypothetical indemnification claims are unsecured. *See EnerNorth Indus.*, 40 C.B.R. (5th) 274, at para. 25 (noting that the Ontario Business Corporations Act "provides an unsecured right of indemnification"); *see also* Barry J. Reiter, *Directors' Duties in Canada* 544 (2006) ("[A]n indemnity is only as good as the corporation providing the indemnity: a director who is entitled

to an indemnity from an insolvent corporation ranks as an unsecured creditor.").   Nothing in either Canadian substantive law or American bankruptcy law gives the Directors' hypothetical indemnification claim priority over other unsecured claims.   *See Christian Life Ctr. Litig. Def. Comm. v. Silva (In re Christian Life Ctr.)*, 821 F.2d 1370, 1373-74 (9th Cir. 1987) (holding that litigation expenses incurred in defending officer for pre-petition condition were not entitled to administrative expense priority and were "at most a general unsecured claim"); *In re Amfesco Indus., Inc.*, 81 B.R. 777, 785 (Bankr. E.D.N.Y. 1988) (denying administrative priority status to a claim for indemnification when the underlying claims "stem[med] from pre-petition services"); *EnerNorth Indus.*, 40 C.B.R. (5th) 274, at para. 25 (concluding that OBCA does not transform directors and officers' legal expenses into legal expenses of the corporation).   Indemnification therefore is not a direct defense to liability, but a potential remedy available to the Directors if they are found liable.

Instead of asserting claims for indemnification, however, the Directors raise the issue of indemnification as a shortcut to defeating the Trustee's claims.   The Directors effectively argue that the Trustee is required, in order to survive a Rule 12(b)(6) motion, to plead the non-applicability of the indemnification clause.

If and when the Directors raise indemnification claims, they will bear the burden of proving that they are entitled to indemnification.   The indemnification clause applies only if the Directors acted in good faith.   The Directors correctly argue that under Canadian law, persons are generally assumed to act in good faith unless proven otherwise.   *Blair v. Consol. Enfield Corp.*, [1995] 4 S.C.R. 5, para. 35 (Can.) (citing *Gen. Motors of Canada Ltd. v. Brunet*, [1977] 2 S.C.R. 537, 548 (Can.)).   The estate therefore would be required to rebut the presumption of good faith to defeat indemnification:   "To a large extent, it is the corporation that must establish,

to the satisfaction of the court, exactly what [the defendant] did that was inimical to its best interests." *Id.* This presumption is relevant in the context of the Directors' (as-yet-unasserted) indemnification claims against the estates. But the presumption of good faith does not amount to a presumption that the Trustee has failed to state a claim for breach of care.

Additionally, a determination of whether the Directors are entitled to indemnification would require fact-finding, inappropriate at the Rule 12(b)(6) stage. The Directors correctly argue that a determination on indemnification does not necessarily need to wait until the conclusion of the proceeding.[5] But indemnification cannot be granted until it is "established that the director or officer fulfilled" the requirement of good faith:

> Section 124(2) of the [Canada Business Corporations] Act requires approval of the court before a corporation may indemnify. That approval would, I think, not be granted unless it were established that the director or officer had fulfilled the conditions set out in subss. 124(1)(a) and (b) and that would require, in many cases, that the proceeding be concluded.

*Chromex Nickel Mines Ltd. v. British Columbia (Sec. Comm'n)* (1991), 4 B.L.R. (2d) 189, para. 12 (Can. B.C.). The presumption of good faith does not eliminate the need for an actual determination—and in the course of such a determination, the Trustee would have the opportunity to rebut the presumption. The Court will not make factual determinations at the Rule 12(b)(6) stage.

---

[5] The Directors also contend that they may be entitled to ongoing defense costs. As noted above, the Directors have not actually asserted an indemnification claim against the estate. Additionally, ongoing defense costs are subject to court approval and are probably not available when the corporation is insolvent. *See Manitoba (Sec. Comm'n) v. Crocus Investment Fund* (2006), 2006 MBQB 19, paras. 40-43 (Can. Man. Q.B.) (approving ongoing defense costs when, "unlike most situations where this issue arises, Crocus is not insolvent and has the financial wherewithal to honour its indemnities where it is appropriate to do so."); *see also* Reiter, *supra*, at 544 ("A court should allow for indemnification to be provided on an ongoing basis where the corporation is solvent and where there is an absence of evidence showing that the former directors and officers failed to meet the criteria of having acted honestly and in good faith with a view to the best interest of the corporations and that they had reasonable grounds for believing that their conduct was lawful.").

In the context of a bankruptcy case, a determination on indemnification may need to wait until after the amount of the Directors' liability (if any) is determined. Because the Directors' unsecured indemnification claim may not be paid in full, a determination of the appropriate amount may have to await the outcome of this proceeding.

Even if the indemnification clause is raised as a defense to the Trustee's claims rather than an independent claim against the estate, the indemnification argument does not defeat the claims at the Rule 12(b)(6) stage. Plaintiffs are not required to plead the non-applicability of possible defenses. "Although dismissal under [R]ule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 468 F.3d 466, 470 (5th Cir. 2006); *see River Capital Advisors of N.C., Inc. v. FCS Advisors, Inc.*, 2011 WL 831282, at *9 (E.D. Tex. Feb. 7, 2011) ("Plaintiff is under no obligation to plead against a possible affirmative defense or the possible exceptions to an affirmative defense."); *see Howeth v. Aramark Corp.*, 2011 WL 1428087, at *2 (D. Utah Apr. 13, 2011) ("The Court construes the motion to dismiss under the indemnification clause as brought under Fed. R. Civ. P. 12(b)(6). . . . Because the [contracts] are matters outside of the pleadings, the Court will exclude them. Accordingly, the indemnification provision must fail as a ground to dismiss under Fed. R. Civ. P. 12(b)(6).").

Unless it is apparent from the face of the complaint that the claims are subject to indemnification—and it is not—the indemnification clause is not a basis for dismissing the Trustee's claims. The Court therefore considers whether the Trustee has stated claims for breach of the duty of care without reference to the standards that would apply to a hypothetical indemnification claim.

**4.  Hitchcock, Eriksson, and Davis' Liability**

The Directors argue that Hitchcock, Eriksson, and Davis were not officers or directors at the time many of the alleged acts occurred.  According to the Directors, Hitchcock and Eriksson joined Ausam's board of directors on July 5, 2007, and Davis became the chief financial officer of Ausam on April 1, 2008.  ECF No. 22, at 19-20.  The Directors assert that Davis never served on Ausam's board.  ECF No. 22, at 20.  The APA—the agreement to purchase the SKH Leases—was allegedly executed on September 22, 2006, and the transactions to close the APA began in "late 2006" and continued "well [into] 2007."  ECF No. 33, at 3-4.

The Directors assert that because Hitchcock, Eriksson, and Davis cannot be liable for these acts, the Trustee's claims should be dismissed, at least in part, against them.

The Court does not dismiss any claims on the basis that Davis was not a director.  The Trustee alleges that Davis was an officer, and the duty of care applies to both directors and officers.  ABCA § 122(1).

The Court also does not dismiss any claims on the basis of the alleged dates, but instead converts the motions to dismiss to motions for summary judgment as to this issue.  The complaint does not allege specific dates on which the Directors assumed their positions with Ausam.  The complaint instead alleges, "At all times relevant to the allegations in this complaint, the [Directors] served on the board of directors of Ausam and/or served as officers of Ausam." ECF No. 33, at 3.  The Trustee does not explicitly concede that the alleged dates on which Hitchcock, Eriksson, and Davis became officers or directors are correct, but he also does not refute the accuracy of these dates.  Instead, he argues that the complaint alleges acts that occurred after each of the Directors was an officer and/or director of Ausam.

Even if the alleged dates on which Hitchcock, Eriksson, and Davis assumed their positions are correct, the purchase of the Rice Well and the executive compensation decisions occurred while they were officers and directors.  Both of these acts are alleged to have taken place in April 2008.  Hitchcock, Eriksson, and Davis, according to both the complaint and the Directors' own arguments, were all officers or directors at this point.  The claims relating to the Rice Well and the executive compensation decisions, to the extent they are stated, are stated against all of the Directors.

With respect to the SKH Leases, the Trustee argues that "pleadings filed with the [Court] indicate that the closings actually did not conclude until July 30, 2008."  ECF No. 23, at 27.  The Court considers neither this assertion, which is not included in the Second Amended Complaint, nor the Directors' assertions regarding the dates Hitchcock, Eriksson, and Davis assumed their positions.  The dates they assumed their positions are not apparent from the Trustee's pleadings, and the Trustee does not actually concede the dates.  The Court cannot resolve this issue without going beyond the pleadings and instead converts the motions to motions for summary judgment as to this issue.

The Court requires the parties, within thirty days of the entry of this memorandum opinion, to file stipulations as to the dates Hitchcock, Eriksson, and Davis assumed their positions.  The parties may file any other summary judgment evidence on this issue.  The Court will issue a further order consistent with the stipulations, the evidence, and this memorandum opinion.

## 5.  Limitations

The Directors also argue that some of the claims are barred by Alberta's two-year statute of limitations.  ECF No. 25, at 24-25.

The Alberta Limitations Act states:

> [I]f a claimant does not seek a remedial order within
> (a) two years after the date on which the claimant first knew, or in
> the circumstances ought to have known,
>> (i) that the injury for which the claimant seeks a remedial
>> order had occurred,
>> (ii) that the injury was attributable to conduct of the
>> defendant, and
>> (iii) that the injury, assuming liability on the part of the
>> defendant, warrants bringing a proceeding,
> or
> (b) 10 years after the claim arose,
> whichever period expires first, the defendant . . . is entitled to
> immunity from liability in respect of the claim.

R.S.A. 2000, c. L-12, s. 3.

The bankruptcy cases were filed on December 30, 2008.  Any live claims belonging to the estate on that date may be asserted by the Trustee until the later of (1) the expiration of the claims under non-bankruptcy law; or (2) two years after the order for relief.  11 U.S.C. § 108(a). The Trustee's complaint against the Directors was filed on December 29, 2010, within the two-year period under § 108(a)(2).  As long as the Trustee's claims were live claims on December 30, 2008, the claims are not barred by the statute of limitations.

Claims may be dismissed on the basis of the statute of limitations if the limitations defense is apparent from the face of the complaint.  *See EPCO Carbon Dioxide Prods.*, 468 F.3d at 470 (allowing Rule 12(b)(6) dismissal on the basis of an affirmative defense if that defense appears on the face on the complaint).

The Directors argue that it is apparent from the Trustee's allegations that some of the claims were not live on the petition date.  The APA was allegedly executed on September 22, 2006.  But the statute of limitations does not necessarily run from the date of the agreement.

As the Directors correctly point out, under the Alberta Limitations Act, "a claim based on a breach of duty arises when the conduct, act or omission occurs[.]"  ECF No. 22, at 8 n.3 (citing R.S.A. 2000, c. L-12, s. 3(3).  However, the limitations period that runs from the date the claim arises—as opposed to the date the claimant knows of the claim—runs for ten years, not two years.  R.S.A. 2000, c. L-12, s. 3(1)(b).  The Trustee alleges that the Directors' alleged breaches of duty occurred less than ten years before the petition date, so the claims are not barred by the ten-year limitations period.

The two-year limitations period also does not bar the claims.  Although the APA was executed more than two years before the bankruptcy petition, the two-year limitations period does not run from the time of the Directors' alleged breach.  The two-year period instead runs from the time when Ausam (or the Trustee) first knew or ought to have known (i) that an injury occurred; (ii) that the injury was attributable to the Directors' conduct; and (iii) that the injury warranted bringing a proceeding.  R.S.A. 2000, c. L-12, s. 3.

The Trustee alleges that "SKH and Ausam closed on the APA through a series of transactions and conveyances beginning in late 2006 and continuing well unto 2007."  ECF No. 33, at 4.  The alleged injury that resulted from the purchase of the SKH Leases would not necessarily have been discovered until after the closing.  It is not apparent from the face of the complaint that this date occurred more than two years before Ausam's bankruptcy petition was filed.  The Court does not dismiss the SKH Leases claim on the basis of limitations.

The acquisition of the Rice Well and the executive compensation decisions allegedly occurred in April 2008, and therefore it is not apparent from the face of the complaint that claims based on these acts are barred.  ECF No. 33, at 10 & 17.  The Court therefore does not dismiss the Rice Well and execution compensation claims on the basis of limitations.

**6. Trustee's Claims**

The exculpation clause, the indemnification clause, and the statute of limitations do not affect the Court's analysis of whether the Trustee has stated claims.   The Court therefore considers the Trustee's allegations in light of the Canadian business judgment rule to determine whether the Trustee has stated claims for negligence.

### a. The SKH Leases

The Trustee has stated a claim for the purchase of the SKH Leases.   Trustee alleges that Ausam executed an Asset Purchase Agreement ("APA") with SKH.   ECF No. 33, at 3.   Under the APA, various oil and gas leases were transferred to Noram, a wholly owned subsidiary of Ausam.   ECF No. 33, at 3.   Ausam paid SKH $13.5 million plus 63,417,143 common shares in Ausam.    The value of one common share was deemed to be (CAD) $0.35 per share— approximately $18,866,600.00 in U.S. dollars for all the shares.   ECF No. 33, at 4.

The Trustee alleges that the Directors failed to conduct due diligence before executing the APA and failed to pursue remedies after the agreement was executed.   First, the Directors failed to engage qualified title counsel.   ECF No. 33, at 5.   Ausam engaged a landman, Soape.   Soape communicated to Ausam that there were title problems with the SKH Leases, but Ausam did not hire a lawyer to investigate.   ECF No. 33, at 5-6.

Second, the Directors excessively relied on SKH's mineral information.   ECF No. 33, at 6-7.   Soape had to rely almost entirely on mineral information provided by SKH.   ECF No. 33, at 6.   The Trustee alleges that this reliance was not reasonable in light of Soape's warnings that serious title problems existed.

Third, the Trustee alleges that the Directors failed to require SKH to provide safeguards for Ausam's interests.   The Directors did not require SKH to correct title defects as a condition

of executing the APA.  ECF No. 33, at 9.  The Directors also did not require a "true up," reserve escrow, or similar provisions that would have allowed the consideration paid for the SKH Leases to be adjusted to make the transaction fair.  ECF No. 33, at 7.  The Trustee alleges that these provisions are standard in oil and gas transactions involving similarly large amounts of acreage and similar timing.  ECF No. 33, at 7-8.

Finally, the Directors allegedly failed to conduct minimal due diligence for the transaction, despite their notice from Soape that there were significant title problems.  ECF No. 33, at 8-9.  After signing the APA and closing on the transactions, the Directors allegedly caused Ausam to fail to pursue appropriate legal remedies.  ECF No. 33, at 9-10.

These failures to engage title counsel, require safeguards or correction of defects, conduct due diligence, and pursue legal remedies, the Trustee alleges, caused injury to the Debtors: "Though the [SKH Leases] had significant value at the time of closing on the APA, conducting even minimal level due diligence would have allowed Ausam to achieve better terms for the [SKH Leases'] purchase."  ECF No. 33, at 9.  Ausam also suffered "injuries caused by the title, leasing and other defects, and the injuries in terms of time and money that Ausam incurred in attempting to address the defects, and . . . injuries in the form of, *e.g.,* delays to the drilling programs[.]"  ECF No. 33, at 9.

Taking all of these allegations as true, the Court concludes that the Trustee states a claim for breach of the duty of care with respect to the SKH Leases.  The Trustee alleges specific circumstances—including the size of the transaction, Soape's warnings about the title problems, and standard practices in the oil and gas industry—that heightened the Directors' necessary level of diligence.  The Trustee also alleges specific acts that, in the context of these circumstances, could plausibly fall outside the range of reasonableness.

The Trustee's allegations center around the Directors' failure to collect sufficient information and failure to take corrective actions.  The Court cannot determine without fact-finding whether the Directors were obliged to engage in more extensive investigation of the alleged title problems. *See Dylex*, 63 O.R. (3d) 659, at para. 26 ("The question of whether in the circumstances of the present case there was a specific duty to make investigations . . . is to be determined in the context of all the facts at trial.").

The Court also cannot determine without fact-finding whether the failure to take corrective actions, such as requiring safeguard provisions in the APA or correction of defects, was outside the range of reasonableness.  The Trustee alleges that "true up," reserve escrow, and similar provisions are standard in the oil and gas industry.  Taking this allegation as true, failure to require one of these standard provisions in a $32 million transaction could plausibly fall outside the range of reasonableness.

The Directors' alleged failure to pursue appropriate legal remedies could plausibly have been outside the range of reasonableness, depending on the facts that were known at the time, the remedies that may have been available, and other circumstances that would be determined at trial.  The Trustee therefore states a claim for negligence with respect to the SKH Leases.

### b.  The Rice Well

The Trustee has stated a claim for negligence in connection with Ausam's investment, together with Vision Resources LLC ("Vision") in the Rice Well, which is located in the Woodbine Formation of Tyler County, Texas.

Around April 2008, the Directors caused the Debtors to acquire a 12.5% working interest in the Rice Well through a joint venture farm-in agreement:

> This acquisition required not only a $1.25 million initial cash outlay, but also additional near-term commitments on the part of Ausam for on-going expenses related to drilling operations. For example, on or about December 18, 2008, Ausam, through its wholly-owned subsidiary, was called upon to make an additional payment of $118,914 for well expenses. The farm-in agreement further contained a draconian forfeiture clause, providing that if a participant failed to advance drilling or other costs as called by the venture within 10 days of the call, the participant would forfeit all of its interest in the well.

ECF No. 33, at 10-11. The Trustee alleges that the farm-in agreement was never effectively approved by a majority of disinterested Ausam directors, but the Directors caused Ausam to enter into the agreement anyway.[6] ECF No. 33, at 11.

The well was to be drilled in the Austin Chalk formation, located in the Woodbine Formation. According to the Trustee, it is widely known that there are significant risks to drilling in parts of the Austin Chalk formation. ECF No. 33, at 11. The formation contains hydrocarbons in vertical fractures that can be completely missed. The area has a history of dry holes. Horizontal drilling can enable extraction of hydrocarbons from the vertical fractures, but horizontal drilling also costs more. ECF No. 33, at 11-12. The advantages of horizontal drilling can also be negated by additional problems: exceptionally high pressures and unconsolidated rubble zones that tend to cause mechanical failures. ECF No. 33, at 12-13.

Around April 9, 2008, Defendants caused Ausam to make an immediate cash outlay of $1.25 million, plus ongoing commitments, for its interest in the Rice Well. Ausam was already projecting a deficit of $1 million for 2008. ECF No. 33, at 13. The Trustee alleges that the

---

[6] The Trustee does not allege that the Directors were not disinterested with respect to the farm-in agreement, and the Court assumes that the protections of the business judgment rule apply to the transaction.

Directors were aware of numerous risk factors. The Debtors risked losing their entire stake in the Rice Well if they failed to come up with cash for advance drilling. The Rice Well involved exceptionally high risks for an Austin chalk venture, and the well was not engineered to address known risks. ECF No. 33, at 13. The well turned out to be a commercial dry hole, and it had to be plugged and abandoned. ECF No. 33, at 14.

The Trustee alleges that the acquisition of the interest in the Rice Well "was not a prudent decision in light of all the risks and circumstances about which the [Directors] knew, or ought to have known, given the then-existing state of Ausam's budget, and was a misuse of limited corporate funds given the difficulties that Ausam was experiencing and would experience with, among other things, Ausam's lender Huff." ECF No. 33, at 14.

The Trustee essentially claims that the Directors decided to enter into an unreasonably risky transaction without sufficient consideration of the known risks. The business judgment rule protects officers and directors who engage in reasonable risks, but it does not mean that all risk-taking is immunized from later review. Courts can, and should, determine "whether an appropriate degree of prudence and diligence was brought to bear in reaching what is claimed to be a reasonable business decision at the time it was made." *People's Dep't Stores Inc.*, [2004] 3 S.C.R. 461, para. 67.

Although the Directors' decision to invest in the Rice Well may be protected by the business judgment rule, the Trustee alleges numerous circumstances that may have made the decision unreasonable. The known risks associated with the Rice Well may plausibly have made it an unreasonable investment for a company that was already experiencing a cash deficit. Independent of the risk that the well would not produce, Ausam ran the risk—in light of its known liquidity problems—of losing its entire investment under the forfeiture clause. The

Directors' level of prudence and diligence must be determined in the context of all the facts presented at trial, not at the Rule 12(b)(6) stage.  It is plausible that because of the combination of Ausam's financial condition and the problems with the well, the decision to invest in the well was outside the range of reasonableness.

However, the Court recognizes that the purpose of the business judgment rule is to protect reasonable risks, and it is not the Court's place to assess whether the level of risk involved in the Rice Well investment was optimal.  The Court doubts that the investment was outside the range of reasonableness, but the Court's doubts are insufficient for a dismissal.  The claim, though doubtful, is still plausible.

### c.  Executive Compensation Decisions

The Trustee has stated a claim for the Directors' compensation decisions with respect to Lummis, Robertson, and Davis' salaries and the April 2008 bonuses.  The Trustee has not stated a claim with respect to any other compensation decisions.

According to the Trustee, many Ausam executives received salaries well above national averages and were awarded bonuses despite an absence of successful drilling.  The Trustee lists numerous specific salaries that were above the national average for comparable jobs.  ECF No. 33, at 17-18.  Many salaries, the Trustee alleges, were "*more than double* national averages for comparable positions."  ECF No. 33, at 17.  For example, Ausam's VP-Operations received a salary of $250,000 when the national average for comparable jobs was around $96,000 to $124,000.  ECF No. 33, at 17.  The VP-Engineering similarly received $250,000 when the national average for comparable jobs was around $107,000 to $138,000.  ECF No. 33, at 17.

The Trustee alleges that the excessive salary amounts added up to a significant sum: "The differences between the actual annual salaries that Ausam paid these employees in early

2008, and the average salary range for comparable jobs, totals approximately $826,500. Coupled

with the unwarranted bonuses paid in 2008 totaling $206,250, the excessive compensation the

Ausam Defendants authorized in 2008 was at least $1,032,750." ECF No. 33, at 18.

The Trustee alleges that the Directors were aware of concerns about excessive

compensation. On April 2, 2008, Ausam board member Barry Borak contended in an email that

the company could run out of money and working capital by the end of the year, "and noted his

personal opinion that Ausam could run out of cash as early as July of 2008." ECF No. 33, at 15.

Borak cited projected budget deficits and "argued that given the company's then-existing

financial state, Ausam needed to conserve its cash and liquid resources through 2008 and until

drilling activities proved successful." ECF No. 33, at 15-16.

Borak also wrote a memo on April 2, 2008 explaining to Defendants "his dissatisfaction

with excessive employee compensation. Though noting that employees' salaries were subject to

written contracts, Borak suggested renegotiation of compensation packages so as to instead

incent employees with stock compensation or stock options (as opposed to salaries which, in his

opinion, were inflated)." ECF No. 33, at 16. Borak noted that salaries at Ausam were "about

*two standard deviations above* industry medians." ECF No. 33, at 16.

Despite Borak's warnings, the Directors allegedly failed to address the problem at the

April 8, 2008 board meeting:

> Minutes for the subsequent Ausam board meeting on April 8,
> 2008, showed that the Defendants ignored the industry norms and
> medians brought to their attention, and approved awarding their
> favored employees with salaries and bonuses far in excess of those
> paid by comparable early stage energy companies. Among the
> unjustified bonuses then awarded to employees (despite the
> absence at the time of successful drilling results for Ausam) were
> the following: Todd Regalado -- $90,000 bonus; Curtis Weddle --

> $90,000 bonus; Phillip Allen -- $13,250 bonus; and Glenda Kovar
> -- $13,000 bonus.

ECF No. 33, at 17.

The Trustee alleges that Ausam suffered injury because of the Directors' compensation decisions. The excessive salaries and bonuses caused "more than $1.0 million in damages to the company." ECF No. 33, at 19. The Trustee also alleges that the Directors ignored Borak's concerns at the April 2008 board meeting.

The Directors say that the Trustee's allegations are speculative:

> The Trustee cannot identify "a particular alternative was definitely available and clearly more beneficial to the company than the chosen transaction." Rather, the Trustee is forced to rely on speculation that attempts to renegotiate the company's employment contracts would have been fruitful. . . . Such speculation about a possible alternative is not sufficient to state a claim for breach of the duty of care under Canadian law.

ECF No. 43, at 7 (citation omitted) (citing *Maple Leaf Foods*, 42 O.R. (3d) 177, at para. 36).

The Directors are correct. The Trustee does not adequately plead that following Borak's suggestion would clearly have been more beneficial to the company. Under *Maple Leaf Foods*, "[t]he fact that alternative transactions were rejected by the directors is irrelevant unless it can be shown that a particular alternative was definitely available and clearly more beneficial to the company than the chosen transaction." 42 O.R. (3d) 177, at para. 36. The Trustee does nothing more than suggest that renegotiation might have been fruitful. The Trustee pleads no facts showing that renegotiation was a feasible option and would clearly have been more beneficial. It is not plausible that the Directors acted outside the range of reasonableness when they did not renegotiate non-insider contracts.

However, several of the Directors were themselves the beneficiaries of the allegedly excessive salaries: Richard Lummis, Alastair Robertson, and Ralph Davis.  ECF No. 33, at 17-18.  The business judgment rule's presumption of reasonableness does not apply to these Directors' decisions regarding their own salaries.  *See Schafer*, 153 Sask. R. 241, para. 25 ("If there is misconduct or a dual relation then the presumption that the decision of the directors is in the best interests of the corporation will not apply.").  As to Lummis, Robertson, and Davis' salaries, the Trustee has stated a claim.  Lummis, Robertson, and Davis' actions with respect to their own salaries are not protected by any presumption of reasonableness.  In light of their duties to Ausam, the substantial difference between their salaries and the national averages, and Ausam's financial difficulties, it is plausible that Lummis, Robertson, and Davis failed to "act prudently and on a reasonably informed basis."  *People's Dept' Stores*, [2004] 3 S.C.R. 461, at para. 67.

Additionally, although it is a close call, the Directors' failure to renegotiate other Directors' salaries may have violated the duty of care.  Renegotiating insider salaries would likely have been more fruitful than renegotiating other employees' salaries.  As insiders, Lummis, Robertson, and Davis had duties to Ausam, and it is plausible that their duties required openness to renegotiating their salaries.  Considering Borak's warnings and the company's financial condition, it is plausible that all the Directors acted outside the range of reasonableness in not renegotiating these three Directors' salaries.

Additionally, it is plausible that the Directors' alleged approval on April 8, 2008 of several bonuses—despite the company's lack of successful results and projected budget deficits—was outside the range of reasonableness.  The Trustee has therefore stated a claim with respect to the April 2008 bonuses.

The Trustee's claim for damages due to excessive executive compensation—other than the damages due to Lummis, Robertson, and Davis' salaries—is dismissed.  The Trustee's claims for damages due to Lummis, Robertson, and Davis' salaries and the April 2008 bonuses are not dismissed.

### Conclusion

The Court grants the Directors' motion to dismiss as to the claim relating to non-insider executive compensation.   After the parties file stipulations regarding the dates on which Hitchcock, Eriksson, and Davis assumed their positions, the Court will issue an order, consistent with the stipulations and this memorandum opinion, regarding all other claims.

SIGNED **November 7, 2011.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE